UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAN AMERICAN AIRWAYS, CORP.,

    Plaintiff/Counterdefendant,

v.

ROBERT E. BARNES,

    Defendant/Counterplaintiff.

Civil Action No.
04-10515JLT

# Memorandum of Reasons in Support of Plaintiff's Motion for Partial Summary Judgment

Robert B. Culliford (BBO #638468)
Pan American Airways, Corp.
14 Aviation Avenue
Portsmouth, NH 03810
(603) 766-2002

*Attorney for Pan American Airways, Corp.*

July 1, 2005

298287.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAN AMERICAN AIRWAYS, CORP.,

                Plaintiff/Counterdefendant,

    v.                                             Civil Action No.
                                                          04-10515JLT

ROBERT E. BARNES,

                Defendant/Counterplaintiff.

## Memorandum of Reasons in Support of
## Motion for Partial Summary Judgment

### I. Introduction

Paintiff/counterdefendant Pan American Airways, Corp. ("Pan Am") has moved, pursuant to Rules 7(b) and 56 of the Federal Rules of Civil Procedure and Rules 7.1 and 56.1 of the Rules of this Court for Partial Summary Judgment on Counts I through IV of defendant/counterplaintiff Robert E. Barnes ("Barnes") Counterclaim. Docket Instrument ("DI") #5. Pursuant to Massachusetts law, Barnes has alleged that Pan Am has: (a) defamed him; (b) abused legal process; (c) intentionally interfered with Barnes' advantageous business relations; and (d) intentionally inflicted emotional distress upon Barnes. For the reasons stated herein, Partial Summary Judgment on these counts is warranted in favor of Pan Am.[1]

---

[1] Because this Court's jurisdiction over this action is based upon diversity of citizenship, Massachusetts substantive law must be applied. *28 U.S.C. §1332, Crellin Technologies, Inc. v. EquipmentLease Corp.*, 18 F.3d 1, 4 (1st Cir., 1994).

1

## II. Factual Background

Pan Am is a Florida corporation with its principal place of business located at 14 Aviation Avenue, Portsmouth, New Hamspshire. Amended Complaint, ¶ 1, (DI #3). Pan Am operates as a commercial air carrier utilizing Boeing 727 aircraft. *Id.* Barnes is an individual who resides in Massachusetts, and who was employed by Pan Am from February of 2002 through July of 2003 in various maintenance capacities, most recently as Vice President of Maintenance. *Id.*, ¶ 2.

In February of 2002, Pan Am purchased from United Airlines—and began taking delivery of—certain Boeing 727 aircraft (the "Aircraft") and engines (the "Engines") installed thereon. Amended Complaint, ¶ 5. These Aircraft and Engines were acquired in order to provide Pan Am with a supply of usable spare parts and spare engines to support its existing fleet of Boeing 727 aircraft, a process in which Barnes participated. *Id.*, ¶¶ 5-6. The Federal Aviation Administration ("FAA") has advised Pan Am that, subsequent to their acquisition by Pan Am, the Aircraft and Engines were not preserved in accordance with practices required by the applicable manuals. *Id.*, ¶ 7, Deposition of Robert E. Barnes ("Barnes Deposition"), Exhibit Two. The FAA has further asserted that—because of such inadequate preservation—the Aircraft and Engines were not fit for use by Pan Am in its operations absent certain additional maintenance and inspection which would not otherwise have been required had the Aircraft and Engines been adequately inspected and preserved upon receipt. *Id.*, Barnes Deposition, Exhibit Three. Consequently, in order to secure the use of the parts from the Aircraft and the use of certain of the Engines, Pan Am has been required to expend hundreds of man-hours of maintenance labor and hundreds of thousands of dollars to pay third party vendors for

additional maintenance and inspection in order to return the Aircraft and Engines to a useful condition. *Id.,* ¶ 8, Barnes Deposition, Exhibit Three.

At all times relevant to this action, Barnes was responsible for the oversight and management of Pan Am's Maintenance Department. Amended Complaint, ¶ 9, Deposition of Robert E. Barnes ("Barnes Deposition"), at 23-24. Barnes' responsibilities included the task of inspecting the Aircraft and Engines upon arrival at Pan Am and ensuring the proper preservation of the Aircraft and Engines subsequent to their receipt by Pan Am. *Id.* As a result of Barnes' intentional and/or negligent failure to properly perform his duties, Pan Am has suffered damages in excess of $500,000.00. Amended Complaint, Counts I-IV.

Shortly after leaving employment at Pan Am, Barnes moved from New Hampshire to Massachusetts, but did not notify Pan Am of his change of address. Barnes Deposition, at 60-61. Furthermore, in the same geographic area, another Robert Barnes resided at the time of commencement of this lawsuit. *Id.* To date, Barnes has received favorable reviews from his employer, has received pay increases that were consistent with other FAA employees during the same time period, and is no longer considered a probationary employee. Barnes Deposition, at 65-67. Barnes has asserted that the was defamed because of the reaction of the public when the allegations of the summons and complaint initiating this lawsuit became known. Barnes Deposition, at 78. Barnes also has a long history of high blood pressure and other physical ailments that preceded the initiation of this action. Barnes Deposition, at 67-77. Pan Am initiated this lawsuit solely to recover damages incurred in performing additional maintenance, inspection and repairs on the Aircraft and Engines to make them useful again. Declaration of Eric H. Lawler

3

("Lawler Declaration"), ¶ 2. Prior to initiating this litigation, Pan Am consulted with its in-house attorney as well as the in-house attorney of its affiliated railroad division regarding the merits of this action and made full disclosure to both attorneys and proceeded on their advice. *Id.*, ¶ 3.

On or about April 22, 2004, Barnes' filed an Answer and Counterclaims in response to the Amended Complaint, denying the majority of the allegations contained in the Amended Complaint, raising several affirmative defenses, and alleging four counterclaims. Answer and Counterclaims, Counts I-IV. The Counterclaims at issue here allege that that Pan Am has: (a) defamed him; (b) abused legal process; (c) intentionally interfered with Barnes' advantageous business relations; and (d) intentionally inflicted emotional distress upon Barnes. Answer and Counterclaims, Counts I-IV.

### III.    Argument

**A. Any statements by Pan Am alleged to have defamed Barnes were privileged.**

In his first counterclaim, Barnes alleges that Pan Am published one or more oral and written false statements which were intended to impeach Barnes's honesty, integrity, virtue, or reputation. Barnes also alleges that Pan Am's statements placed him in a bad light with his employer, and that these statements were made intentionally in disregard of the truth of those statements. However, when Barnes was asked to identify theses allegedly defamatory statements, he explained that he felt that:

> "When the original documents were delivered to the fire station, they were opened and shown to a number of individuals, and that information was passed on to others on the airport which I feel affected my integrity, and I had a number of comments from people who had seen them." Barnes Deposition, at 78.

4

Referring to the service of the summons and complaint to his place of employment, Barnes has alleged defamation despite the fact that under Massachusetts law the statements made in those pleadings are absolutely privileged. To state a claim for defamation in Massachusetts, a plaintiff must prove: (a) a defamatory statement; (b) of and concerning the plaintiff; (c) made in public; (d) that the defamation was false; and (e) that plaintiff was damaged as a result. *Cignetti v. Healy*, 89 F. Supp.2d 106, 126 (D. Mass., 2000). However, even if all of these factors are met, a claim for defamation must fail if the allegedly defamatory statements are protected by a privilege. *Cignetti*, 89 F. Supp.2d at 126.

Here, the statements made in the summons and complaint are subject to an *absolute* privilege under Massachusetts law as statements made "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Sullivan v. Birmingham*, 11 Mass.App.Ct. 359, 361 (1981) (quoting, *Sriberg v. Raymond*, 370 Mass. 105, 109 (1976). Plainly, this absolute privilege attaches here, as the statements described by Barnes as being defamatory were included in a summons and complaint initiating this lawsuit, and therefore relevant and pertinent to these judicial proceedings. *Sullivan*, 11 Mass.App.Ct. 359, 362.

Moreover, while it is regrettable that third parties had access to the documents, this in no way waived this absolute privilege, as the only known address for service of the summons and complaint was Barnes' workplace, because Barnes did not notify Pan Am of a forwarding address when he moved to Massachusetts, and another Robert Barnes lived in the same geographic area, making it difficult to identify a proper residence for service, Barnes Deposition, at 60-61, nor was it foreseeable or reasonable to expect that

third parties would open a package delivered to Barnes and disseminate its contents. Barnes Deposition, at 78, *Dolan v. Von Zweck*, 477 NE.2d 200, 201 (1985).

Accordingly, Partial Summary Judgment as to Count I of Barnes' counterclaims should be granted to Pan Am.

### B. Pan Am initiated this action solely to recover its damages as a result of Barnes' intentional and negligent acts.

Barnes also alleges an abuse of legal process on the theory that Pan Am filed this action to retaliate against Barnes for leaving Pan Am's employ and joining the FAA. Counterclaim II. However, Barnes cannot point to any factual support for this allegation, nor can Barnes refute the evidence offered by Pan Am in support of its position.

To succeed on a claim of abuse of legal process, it must be shown that: (a) "process" was used; (b) for an ulterior or illegitimate purpose; and (3) damages resulted. *Jones v. Brockton Public Markets, Inc.*, 369 Mass. 387, 389 (1975). When applied to the facts of this matter, it is clear that Barnes cannot make its claim, as he cannot prove that Pan Am acted with an ulterior or illegitimate purpose in filing this action, nor can he show that he has been damaged by Pan Am's actions. More particularly, as explained by Pan Am's Senior Vice President and Chief Financial Officer, this action was initiated solely to recover Pan Am's damages as a result of Barnes's intentional and negligent failure to properly maintain and preserve the Aircraft and Engines. Lawler Declaration, ¶ 2. Importantly, there is also no indication of any form of coercion on behalf of Pan Am—either prior to the lawsuit or subsequently—to obtain a collateral advantage over Barnes because, as Mr. Lawler points out, Pan Am's sole concern is to recover its

damages for the intentional and negligent actions of Barnes. *Id.*, *Powers v. Leno*, 24 Mass.App.Ct. 381, 383 (1987).

What is clear, however, is that Barnes had responsibility for the oversight and management of Pan Am's Maintenance Department—including the task of ensuring proper preservation of the Aircraft and Engines—at all relevant times, and that FAA has determined that the Aircraft and Engines were not properly preserved. Amended Complaint, ¶ 9, Barnes Deposition, at 23-24.

Accordingly, Partial Summary Judgment as to Count II of Barnes' counterclaims should be granted to Pan Am.

### C. Pan Am's action against Barnes was not designed to interfere with his employment relationship with FAA.

Apparently convinced that Pan Am initiated this litigation solely to retaliate against Barnes for going to work for FAA, Barnes next proffers a counterclaim for intentional interference with advantageous business relationships, alleging that Pan Am intentionally interfered with his employment by serving the complaint on Barnes at his place of employment. Once again, however, Barnes allegations ring hollow, as the facts do not support such a finding.

In order to prevail on this counterclaim, Barnes must prove that: (a) he had an advantageous business relationship with FAA; (b) Pan Am knowingly induced FAA to dissolve that relationship; (c) Pan Am's interference, in addition to being intentional, was improper in motive or means; and (d) Barnes was harmed by Pan Am's actions. *G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991). Based upon the facts that have been elicited through discovery, this counterclaim must fail as well.

In the first instance, the facts clearly show that: (a) Barnes was at all relevant times responsible for the proper preservation of the Aircraft and Engines, Amended Complaint, ¶ 9, Barnes Deposition at 23-24; and (b) that FAA did not believe that the Aircraft and Engines were properly preserved. Hubbell Deposition at 28, 31-32. Plainly, therefore, Pan Am did not have an improper motive in pursuing this lawsuit against Barnes, if for no other reason than that the damage suffered by Pan Am fell under his responsibility. Secondly, Pan Am served Barnes at his place of employment because it had no other address for Barnes, and efforts to locate a new address were thwarted by the fact that another Robert Barnes lived in the same geographic location. Barnes Deposition, at 60-61. Lastly, even if Barnes could establish that Pan Am was acting with an improper motive, Barnes cannot show that Pan Am's actions resulted in harm to him. Rather, by his own admission, Barnes has progressed in his work at the FAA in the same manner as other employees, with no indication that service of the complaint at his workplace had any adverse effect on his employment opportunities. Barnes Deposition, at 65-67.

In any event, it is apparent that Pan Am is acting in good faith by pursuing this action, and to further underscore that good faith belief that its cause of action has merit, Pan Am submits that it discussed this action with not one, but two, attorneys before proceeding to litigation. Lawler Declaration, ¶ 3. In these discussions, Pan Am fully disclosed its position, and acted upon the advice of those attorneys. *Id.*, *Fordham v. Cole*, 1993 WL 818597 (Mass. Super. 1993), *5.

Accordingly, Partial Summary Judgment as to Count III of Barnes' counterclaims should be granted to Pan Am.

### D. Barnes cannot prove that Pan Am intentionally inflicted emotional distress.

Pursuant to Massachusetts law, in order to state a claim for intentional infliction of emotional distress, the pleading party must allege: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of the conduct; (2) that the conduct was "extreme" and "outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community;" (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable [person] could be expected to endure. *Tetrault v. Mahoney, Hawkes & Goldings, et. al.*, 425 Mass. 456, 466, 681 N.E.2d 1189 (1997), citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145, 355 N.E.2d 315 (1976). In conducting an analysis of whether these elements have been satisfied, a court is permitted to make findings of law as to the sufficiency of the allegations. *Sena v. Commonwealth of Massachusetts, et. al.*, 417 Mass. 250, 264, 629 N.E.2d 986 (1994).

In making a determination as to whether a claim of intentional infliction of emotional distress is legally sufficient, a showing must be made that a defendant's actions go beyond "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Tetrault v. Mahoney, Hawkes & Goldings, et. al.*, 425 Mass. at 466. Moreover, it is not enough to allege that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that the conduct was malicious or would entitle a plaintiff to punitive damages in another tort. *Tetrault*, 425 Mass. at 466. Indeed, "outrageous" conduct has been found to be depicted only by a "high order of reckless ruthfulness or deliberate intolerance that…is simply

9

intolerable." *Conway v. Smerling, et. al.*, 37 Mass. App. Ct. 1, 8, 635 N.E.2d 268 (1994), and by conduct that is considered "utterly intolerable in a civilized community." *Sena v. Commonwealth of Mass.*, 417 Mass. at 265. Of particular relevance here, as well, is the requirement that the emotional distress allegedly suffered by the plaintiff be severe, and beyond what a "reasonable person could be expected to endure." *Tetrault*, at 466.

In applying the facts asserted in the Counterclaim to Massachusetts precedent, it is clear that Barnes has failed to allege the required elements to support a claim for intentional infliction of emotional distress. More particularly, Barnes has alleged that Pan Am has intentionally inflicted emotional distress on him by defaming him to Pan Am employees and by initiating this lawsuit. However, even if these allegations were true—which Pan Am denies—they still fail to meet the minimum requirements for "extreme and outrageous conduct." Rather, keeping in mind that the instant action is one for recovery of damages incurred by Pan Am as a direct and proximate result of the acts and omissions of Barnes, it is clear that Pan Am's actions are well within the bounds of decency.

This premise is further supported by comparing the nature of Pan Am's actions with similar acts that have been found to fall short of "extreme and outrageous" conduct. Specifically, the investigation and reporting of suspected embezzlement by an employee based on objective facts, *Conway*, 37 Mass. App.Ct. at 9, an application for an arrest warrant upon belief that a person obtained stolen property, *Sena*, at 264, and placing female troopers on restricted duty with no supportable medical basis, *Butner v. Dept. of State Police, et. al.*, 60 Mass.App.Ct. 461, 471, 803 N.E.2d 722 (2004), have all been

...

found to have fallen short of the "extreme and outrageous" conduct that is required to support liability for intentional infliction of emotional distress.

By contrast, in those instances where conduct has been found to constitute grounds for a determination of liability, there is a significant difference in relation to the conduct complained of by Barnes. More particularly, continuous harassing phone calls and visits to an ill woman, *Boyle v. Welk, et. al.*, 378 Mass. 592, 593-4, 392 N.E.2d 1053 (1979), continuous failure of landlord to repair water and sewer leaks in an apartment, *Simon v. Solomon*, 385 Mass. 91, 95-97, 431 N.E.2d 556 (1982), public humiliation of an employee by accusing her of stealing with no foundation, *Agis v. Howard Johnson Co.*, 371 Mass. at 144-5, and superimposing fellow employee's face on pornographic material and distributing it, *Bowman v. Heller*, 420 Mass. 517, 522, 651 N.E.2d 369 (1995), are all clearly distinguishable from Pan Am's efforts to recoup its losses from the responsible party. Moreover, the mere allegation that Pan Am defamed Barnes is also not sufficient, because without more, an allegation of tortious activity—absent a showing of extreme and outrageous conduct—cannot support a finding of liability for intentional infliction of emotional distress. *Tetrault*, at 466.

The Counterclaim also fails to allege that the emotional distress allegedly suffered by Barnes as a result of Pan Am's actions was "severe" and of a nature that "no reasonable person could be expected to endure." *Tetrault*, at 466. Rather, the only allegations made in the Counterclaim are that Barnes has suffered physical and mental pain and distress, emotional suffering, anxiety, humiliation and embarrassment, and will allegedly continue to be distressed. Answer and Counterclaims, ¶ 60. While Pan Am acknowledges that having one's ability questioned and being the defendant in a lawsuit

may be a traumatic experience for some, it is also an experience that many people undergo. Moreover, the types of distress alleged by the complaint hardly go beyond what a "reasonable person could be expected to endure", and therefore also fail to meet to minimum standards to state a cause of action for intentional emotional distress. Finally, it is also important to note that the very same symptoms complained of by Barnes are those symptoms that he endured even before this litigation was commenced. Barnes Deposition, at 67-77.

It is also clear that Barnes' claim for intentional infliction of emotional distress must fail because the alleged acts giving rise to this claim arose from the statements of Pan Am "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Sullivan*, at 361. In other words, Barnes alleges that Pan Am's initiation of this lawsuit has caused him emotional distress, though Massachusetts law makes it clear that statements made in relation to litigation are absolutely privileged, and cannot give rise to a claim for intentional infliction of emotional distress. *Meltzer v. Grant*, 193 F.Supp.2d 373, 378 (D. Mass. 2002). Nor has Barnes been able to identify any of the conversations he had in which defamatory statements allegedly made by Pan Am outside the scope of this litigation were relayed to him. Response to Interrogatory Number Seven of Defendant's Amended Response to Plaintiff's First Set of Interrogatories.

In closing, as discussed above in Point III.C, Barnes was served with the summons and amended complaint at his place of employment because no other address was available to Pan Am. Accordingly, it is impossible to conclude that Pan Am took this step intentionally to inflict emotional distress on Barnes.

Accordingly, Partial Summary Judgment as to Count IV of Barnes' counterclaims should be granted to Pan Am.

## II.    Conclusion

For the reasons stated herein, Pan Am respectfully requests that Partial Summary Judgment on Counts I-IV of Barnes' counterclaims be granted in its favor, and for such other relief as this court deems just and proper.

**Dated: July 1, 2005**

Respectfully submitted,

/s/ Robert B. Culliford
Robert B. Culliford (BBO #638468)
Pan American Airways, Corp.
14 Aviation Avenue
Portsmouth, NH 03801
(603) 766-2002

*Attorney for Pan American Airways, Corp.*