UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAN AMERICAN AIRWAYS, CORP., | * |
| | * |
| Plaintiff/Counterdefendant | * |
| | * |
| v. | *   Civil Action No. 04-10515-JLT |
| | * |
| ROBERT E. BARNES, | * |
| | * |
| Defendant/Counterplaintiff | * |

MEMORANDUM

October 19, 2005

TAURO, J.

Plaintiff/Counterdefendant, Pan American Airways, Corp. ("Pan Am") alleges that Defendant/Counterplaintiff Robert E. Barnes ("Barnes"), a former employee of Pan Am, failed to properly perform his duties while employed by Pan Am, resulting in substantial financial harm to Pan Am. Barnes denies these allegations, and asserts four counterclaims against Pan Am which are the subject of this dispute: (1) Defamation; (2) Abuse of Process; (3) Intentional Interference with Advantageous Business Relations; and (4) Intentional Infliction of Emotional Distress. Pan Am has moved for Partial Summary Judgment on all four counterclaims. For the reasons set forth below, Plaintiff/Counterdefendant's Motion for Partial Summary Judgment is ALLOWED IN PART AND DENIED IN PART.

**Background**

Pan Am is a Florida corporation which operates as a commercial air carrier utilizing

Boeing 727 aircraft.[1] Barnes is an individual who resides in Massachusetts and who was employed by Pan Am as its Managing Director of Maintenance Operations from February 11, 2002, through April 1, 2002, and as its Vice President of Maintenance from April 1, 2002 through July 21, 2003.  In February of 2002, Pan Am purchased certain Boeing 727 aircraft (the "Aircraft") and engines (the "Engines").  Pan Am acquired this equipment to generate a supply of usable spare parts and spare engines to support its existing fleet of Boeing 727 aircraft.  The Federal Aviation Administration ("FAA") subsequently informed Pan Am that the Aircraft and Engines were not preserved in accordance with practices required under the applicable manuals.  The Aircraft and Engines required additional maintenance and inspection which would not have been necessary had the Aircraft and Engines been adequately inspected and preserved upon receipt.  In order to make use of the equipment, Pan Am performed substantial repairs on the Aircraft and Engines.

At all relevant times, Barnes was at least partially responsible for the oversight and management of Pan Am's Maintenance Department ("the Department"), ensuring that the Department performed its daily functions in compliance with federal regulations.  Such daily functions included inspecting and ensuring the proper preservation of the Aircraft and Engines subsequent to their receipt by Pan Am.  In July of 2003, Barnes resigned from his employment with Pan Am.  In August of 2003, Barnes began to work for the FAA.

Pan Am brought an action against Barnes to recover damages for the harm suffered as a

---

[1] The following undisputed facts are drawn from Pl.'s Amend. Compl., Pl.'s Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. on Countercl. I through IV, ("Pl.'s Mem."), Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Partial Summ. J. on Countercl. I through IV ("Def.'s Mem."), and the evidentiary materials submitted in support.

result of Barnes' alleged failure to perform his duties while employed by Pan Am. Pan Am claimed that Barnes negligently failed to inspect, maintain, and/or preserve the Aircraft and Engines, and negligently failed to properly supervise, manage, and oversee employees responsible for inspecting, maintaining, and preserving the Aircraft and Engines. In his Answer, Barnes denied that he did not properly perform his duties while employed by Pan Am, and asserted four counterclaims against Pan Am: (1) Defamation; (2) Abuse of Process; (3) Intentional Interference with Advantageous Business Relations; and (4) Intentional Infliction of Emotional Distress. These counterclaims are the subject of the dispute presently before this Court upon Pan Am's Motion for Partial Summary Judgment on all four counterclaims.

## Discussion

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and . . . the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[2] Pursuant to this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[3]

In deciding whether to allow a motion for summary judgment, a court "must view the

---

[2] Fed. R. Civ. P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996).

[3] Id. (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995)).

entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."[4]  A court, however, need not afford any weight to "conclusory allegations, improbable inferences, and unsupported speculation."[5]

**A.      Defamation**

In his first counterclaim, Barnes alleges that Pan Am published one or more oral and written false statements which were intended to impeach Barnes' honesty, integrity, virtue, or reputation.[6]  Barnes claims that he was defamed when the summons and complaint initiating this lawsuit were served at his place of employment, and the allegations contained therein became known to persons at his workplace and the public generally.[7]  Barnes states that when the documents were delivered to his workplace, they "were opened and shown to a number of individuals," and that the information contained therein was subsequently passed on to others.[8]  In serving process at his place of work in violation of Fed R. Civ. P. 4, Barnes contends that Pan Am intended to defame him.[9]

To state a claim for defamation in Massachusetts, a plaintiff must prove: (1) a defamatory statement; (2) of and concerning the plaintiff; (3) made in public; (4) that the defamation was

---

[4] Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

[5] Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

[6] Def.'s Answer, Affirmative Defenses and Countercl. to First Am. Compl. ¶ 35.

[7] Def.'s Statement of Disputed Facts ¶ 7.

[8] Barnes Dep. at 78.

[9] Def.'s Mem. at 4, Pl.'s Mem at 5.

false; and (5) that the plaintiff was damaged as a result.[10]  Even if all such factors are met, however, a claim for defamation must fail if the allegedly defamatory statements are privileged.[11]

Massachusetts law recognizes an absolute privilege for statements made "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation."[12] This broad privilege is "based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients."[13]  The privilege, however, cannot be exploited as an opportunity to defame with impunity, because it is available only when the allegedly defamatory remarks are relevant or pertinent to the judicial proceedings.[14] Moreover, even such a broad privilege may be lost by "unnecessary or unreasonable publication" to parties unrelated to the litigation.[15]  The determination of whether the publication of statements to third parties is unnecessary or unreasonable is necessarily fact-specific.  By merely filing a complaint, however, or making pertinent statements on a privileged occasion with the hope that it will be further published, the speaker has not engaged in "communication . . . made in such a manner as to unnecessarily and unreasonably publish it to others, as to whom the occasion is not privileged."[16]  In fact, one court has held that there must be some act by the defendant other than

---

[10]Cignetti v. Healy, 89 F. Supp.2d 106, 126 (D. Mass., 2000).

[11]Id. at 126.

[12]Sullivan v. Birmingham, 416 N.E.2d 528 (Mass. 1981) (quoting Sriberg v. Raymond, 345 N.E.2d 882 (Mass. 1976).

[13]Id. (citing Restatement (Second) of Torts, § 586 cmt. a (1977)).

[14]Id. (citing Mezullo v. Maletz, 118 N.E.2d 356 (Mass. 1954)).

[15]Id. (citing Brown v. Collins, 402 F.2d 209, 213-14) (D.C. Cir. 1968)).

[16]Id. at 366.

the first utterance with the *intent* that it be further communicated.[17]

In the instant case, Barnes claims that Pan Am's improper service of process at his workplace constituted an intentional act of defamation at his place of employment. Barnes further claims that because the package containing the summons and complaint was opened and shown to third parties, Pan Am waived any privilege that would have applied to the otherwise defamatory statements contained therein. Pan Am claims, however, that it served process at Barnes' place of work simply because it did not have Barnes' new home address and could not locate it easily because another Robert Barnes lived in the area. As such, Pan Am denies any allegation of intent to defame Barnes at his workplace.

Although the summons and complaint that relate to the instant litigation do clearly fall within the ambit of the absolute privilege, it is unclear whether Pan Am served process at Barnes' workplace improperly with the knowledge, or intent, that the summons and complaint would be published to others. If Pan Am served process at an improper location with knowledge or intent that non-parties to the litigation might be exposed to the contents of the package, it could be found to have unreasonably and unnecessarily published defamatory statements. In that case, Pan Am would have waived the privilege, and opened the door to a defamation claim. Given this triable issue of fact with respect to Barnes' first counterclaim, Pan Am's Motion for Partial Summary Judgment as to Count I of Barnes' counterclaims is DENIED.

**B.    Abuse of Process**

In his abuse of legal process claim, Barnes alleges that Pan Am filed this action in retaliation for Barnes leaving Pan Am's employ and joining the FAA. To state a claim for abuse

---

[17] Id.

of legal process, Barnes would have to show that (a) process was used; (b) for an ulterior or illegitimate purpose; and (3) that damages resulted.[18]

Barnes offers no persuasive factual support for its claim that Pan Am brought this suit in retaliation for Barnes' choice to leave Pan Am's employ. Barnes points only to the fact that he is the sole defendant being sued for damage to the Aircraft and Engines, when, according to him, many others shared the responsibilities of maintaining, preserving, and inspecting the equipment.[19] Pan Am's decision not to name other Defendants in the chain of management, however, does not suggest retaliatory motive with respect to Barnes. To draw such an inference from this fact alone would be to credit "improbable inferences," and "unsupported speculation."[20]  Even if the court were persuaded by Barnes' unsubstantiated assertion that vengeance played a role in Pan Am's decision to sue him, an improper motive in bringing a suit is irrelevant if Pan Am also had a legitimate reason to file suit against Barnes. In such mixed-motive cases, if process is employed for its intended legal purpose, there can be no abuse of process claim even if the person also possessed an improper motive.[21]

Although Barnes claims that Pan Am brought this action *solely* in an effort to retaliate

---

[18] Jones v. Brockton Public Markets, Inc., 340 N.E.2d 484, 485 (Mass. 1975).

[19] Def.'s Mem at 5.

[20] Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

[21] Vahlsing v. Commercial Union Insurance Co., Inc., 928 F. 2d 486 (1st Cir. 1991). See also Restatement (Second) of Torts § 682 cmt. b (1977) ("there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior motive of benefit to the defendant"); and Powers v. Leno, 509 N.E.2d 46 (Mass. 1987) (holding that bad intentions alone are insufficient to impose liability for an abuse of process claim.).

against him, there are insufficient facts to support this allegation. Moreover, Pan Am did suffer financial losses as a result of the improper maintenance of equipment over which Barnes had at least some supervisory responsibility. While Pan Am may have harbored spite for Barnes, or even held him in utter disregard, it is nonetheless clear that Pan Am had a legitimate basis for bringing a lawsuit against him. In light of this legitimate purpose, the abuse of process claim must fail, and thus Partial Summary Judgment as to Count II of Barnes' counterclaims is ALLOWED.

**C.   Intentional Interference with Advantageous Business Relations**

In his third counterclaim, Barnes alleges that Pan Am intentionally interfered with his advantageous business relationship with the FAA. To prevail on this counterclaim, Barnes must prove that: (1) he had a contract or advantageous relations with the FAA; (2) Pan Am knowingly induced the FAA to break that contract, or interfere with the advantageous relations; (3) Pan Am's interference was both intentional and improper in motive or means; and (4) Barnes was harmed by the defendant's actions.[22]

As noted with respect to the abuse of process claim, Barnes offers no factual basis for his claim that Pan Am's motive or means in bringing this lawsuit was improper. Even if Pan Am did harbor an improper motive, Barnes does not assert any actual harm or damages. In fact, Barnes admits that he has progressed in his work at the FAA in the same manner as other employees, that his employer review was quite favorable, and that he has received pay increases consistent with those received by other FAA employees during the same time period.[23] He claims only that, although he has progressed at work, he could have progressed *further* without Pan Am's

---

[22] G.S. Enters., Inc. v. Falmouth Marine, Inc., 571 N.E.2d 1363, 1369 (Mass. 1991).

[23] Barnes Dep. at 66.

interference, citing the inconvenience of being sued as costing him "time and money."[24]  This argument is unpersuasive.  While this court is aware that litigation can be both time consuming and expensive, to allow a claim for intentional interference with advantageous business relations anytime an employed person is sued would clearly exceed the intended scope of this cause of action.  The inconvenience of being sued, while often considerable, is simply not of the character of harm that would support a claim for intentional interference with advantageous business relations.  This is especially so where the employment relationship has not been materially affected by such inconveniences.  Partial Summary Judgment as to Barnes' counterclaim III is therefore ALLOWED.

**D.     Intentional Infliction of Emotional Distress**

In his fourth and final counterclaim, Barnes alleges intentional infliction of emotional distress through Pan Am's purported defamatory actions and in initiating this lawsuit.  In order to state a claim for intentional infliction of emotional distress, Barnes must prove that: (1) Pan Am intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of the conduct; (2) the conduct was "extreme" and "outrageous," "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community;" (3) Pan Am's actions caused Barnes' distress; and (4) Barnes' emotional distress was "severe" and of a nature "that no reasonable [person] could be expected to endure."[25]

In addition, statements made in the institution or conduct of litigation are absolutely

---

[24]Def.'s Mem at 6.

[25]Tetrault v. Mahoney, Hawkes & Goldings et. al, 681 N.E.2d 1189 (Mass. 1997) (citing Agis v. Howard Johnson Co., 355 N.E.2d 315 (Mass. 1976).

privileged and cannot give rise to a claim for intentional infliction of emotional distress.[26] As noted with respect to the discussion of Barnes' defamation counterclaim, the statements made in the summons and complaint—which form the basis of both the defamation and emotional distress counterclaims—clearly fall within the protection of the absolute privilege.  What again remains unclear is whether Pan Am's choice to serve Barnes at his workplace amounted to unnecessary and unreasonable publication to third parties, thus *waiving* the privilege.  But the Court need not address that disputed fact, because even assuming, *arguendo*, that Pan Am's conduct was found to be unnecessary and unreasonable, it could hardly be deemed "extreme and outrageous," or "utterly intolerable in a civilized community."[27]  Extreme and outrageous behavior is defined as behavior that has "a higher order of reckless, ruthless or deliberate malevolence that. . . is simply intolerable."[28]  Even viewing the allegations in the light most favorable to Barnes, Pan Am's behavior cannot accurately be characterized as "extreme and outrageous."  Quite the contrary, "extreme and outrageous" conduct is typically far more egregious than the acts presented to us in the instant case.[29]  Moreover, a mere allegation of tortious activity, absent a showing of extreme and outrageous conduct, cannot support a finding of liability for intentional infliction of emotional

---

[26] Meltzer v. Grant, 193 F. Supp.2d 373, 378 (D. Mass. 2002).

[27] Id.

[28] Conway v. Smerling, et. al., 635 N.E.2d 268, 273 (Mass. 1994).

[29] See, e.g. Bowman v. Heller, 651 N.E.2d 369 (Mass. 1995) (superimposing fellow employee's face on pornographic material and distributing it); Simon v. Solomon, 431 N.E.2d 556 (Mass. 1982) (continuous failure of a landlord to repair water and sewer leaks in an apartment); and Boyle v. Wenk, et.al., 392 N.E.2d 1053 (Mass. 1979) (continuous harassing phone calls and visits to an ill woman).

distress.[30]  Finally, there is simply no persuasive support for the claim that Barnes's suffered emotional distress that was "severe" and of a nature that "no reasonable person could be expected to endure."[31]  While this lawsuit may be embarrassing, or even humiliating, intentional infliction of emotional distress claims contemplate a far more substantial harm. Because Pan Am's conduct was not "extreme and outrageous," and Barnes' emotional distress cannot be described as "severe," Barnes' counterclaim for intentional infliction of emotional distress fails.  Partial Summary Judgment on counterclaim IV is ALLOWED.

### Conclusion

For the foregoing reasons, Plaintiff/Counterdefendant's Motion For Partial Summary Judgment is DENIED as to Counterclaim I, and ALLOWED as to Counterclaims II, III, and IV.

AN ORDER WILL ISSUE.

    /s/ Joseph L. Tauro
United States District Judge

---

[30] See Tetrault, 681 N.E.2d at 1197.

[31] Id. (citing Agis v. Howard Johnson Co., 355 N.E.2d 315 (Mass. 1976)).