UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.: 004-105150JLT

| | |
|---|---|
| PAN AMERICAN AIRWAYS CORP., | ) |
|     Plaintiff/Counterclaim Defendant, | ) |
| vs. | ) |
| | ) |
| ROBERT E. BARNES, | ) |
|     Defendant/Counterclaim Plaintiff. | ) |

## JOINT PRE-TRIAL MEMORANDUM

## JOINT PRE-TRIAL MEMORANDUM

**I.     Concise summary of the evidence to be offered by the Plaintiff.**

This is an action for damages brought against the Defendant, a former employee of Pan Am, as a result of his failure to properly perform his duties while employed by Pan Am, which conduct has resulted in substantial financial and operational harm to Pan Am. The said damage resulted from Defendant's failure to properly perform his responsibility to ensure that certain aircraft engines were inspected, maintained and/or preserved in accordance with applicable regulatory requirements, industry standards and other requirements, rendering the said engines not airworthy in the view of the Federal Aviation Administration. As a result, the Plaintiff incurred damages in the amount of $464,330.74 for repairs to the aircraft engines.

**Defendant's Statement**

Guilford Transportation Inc., (GTI) and Plaintiff, Pan American Airways, Inc. (Pan Am) purchased airplanes from United Airlines in 2002, but only Airplanes purchased by Pan Am were under Pan Am's control. Most of the Airplanes were purchased as part-out aircraft and required maintenance.

Pan Am shares its maintenance facility with Boston-Maine Airways (BMA) in Portsmouth, NH and stores its engines in the same location as GTI and Boston-Maine Airways.

Guilford Transportation Inc., is the parent Corporation of both BMA and Plaintiff, Pan Am.

All three corporations are owned by Timothy Mellon and Dave Fink, and are operated under the same executive Management.

Mr. Barnes, the Defendant, left Pan Am in July 2003 and began his employment with the Federal Aviation Administration (FAA) in August of 2003. In March of 2004, Pan Am filed this lawsuit against Mr. Barnes.

One FAA inspector, Mr. Hubbard, believed that some of the engines stored, were not in compliance with the manufacturers' storage recommendations. However, during Mr. Barnes' employment with Pan Am, no specific engine storage concerns regarding engine storage and preservation were discussed. The FAA inspector, Mr. Hubbard, discussed engine storage in a general manner, and agreed with Mr. Barnes that, aside from the manufacturer's recommendations, alternate means of keeping engines airworthy were available to Pan Am. After Mr. Barnes was no longer employed with Pan Am, Mr. Hubbard wrote letters to Pan Am executives, expressing concerns over improperly stored engines. The Plaintiff Corporation and its maintenance personnel disagreed with Mr. Hubbard's opinion. It is the responsibility of an airline, in this case the Pan Am, and not the FAA, to determine the airworthiness of its aircraft and engines. Plaintiff, for five months after Mr. Barnes had left Pan Am, through its executives, had repeatedly assured the FAA, in written correspondences and meetings with FAA staff that Pan Am's aircraft and engines were airworthy. These assurances continued until December of 2003, five months after Mr. Barnes had left Plaintiff's employment, and at least one airplane was commercially operated by Pan Am after Mr. Barnes had left Plaintiff's employment. Plaintiff could not have flown the aircraft for passenger service without first determining that the aircraft and all three of its engines were airworthy.

Dave Fink, President of Pan Am, in February of 2004 sent a letter to the FAA complaining about, the FAA's Principal Maintenance Inspector, Mr. Hubbard's "confrontational and obstructionist behavior."

In 2004, Boston-Maine was in the process of applying for certification for Boeing 727 airplanes, to be able to fly Pan Am's airplanes.

In April 2004, Pan Am officials contacted U.S. Senator John E. Sununu and explained that Pan Am experienced "a continuation and elevation in the level of disruptive activity on the part of inspectors from the Portland, Maine, Flight Standards District Office (FSDO)." Pan Am officials also contacted U.S. Senators Judd Gregg and John Sununu, and Congressman Jeb Bradley to complain about the FAA's delay in Boston-Maine's certification process. Additionally, Senators Gregg and Sununu were advised that the FAA "secretly hired both the Vice President of Maintenance [Mr. Barnes/Defendant] and Chief Inspector [Mr. Stalzer] for BMAir at a critical juncture in the B-727 certification process and then demanded that the carrier explain the loss of these key personnel."

Plaintiff, improperly served its original complaint to another Robert Barnes, working at the Logan Fire Station, at Logan Airport. The other Mr. Barnes opened and read the complaint and forwarded the documents to the Defendant's supervisor, Ms. Beth Babb.

2.   **Agreed upon Facts**

   1.   Pan Am is a Florida corporation which operates as a commercial air carrier utilizing Boeing 727 aircraft.

   2.   In February of 2002, Pan Am purchased certain Boeing 727 aircraft ('the Aircraft") and engines ("the Engines") from United Airlines.

   3.   Mr. Barnes was employed with Pan American Airways from February 2002 to July, 2003.  Robert Barnes was employed by Pan Am as its Managing Director of Technical Operations from February 11, 2002 through April 1, 2002, and as its Vice President of Maintenance from April 1, 2002 until July 2003.

   4.   In July of 2003, Barnes resigned from his employment with Pan Am; and in August of 2003, Barnes began to work for the FAA.

   5.   During Robert Barnes' employment with Pan American Airways, Inc.David Fink was the President of Pan American Airways, Inc. During Robert Barnes' employment with Pan Am, he attended daily meetings with David Fink and other Pan Am employees.

   6.   During Robert Barnes' employment with Pan Am, he attended daily meetings with David Fink and other Pan Am employees.

   7.   Robert Barnes reported to the president of Pan American Airway, Inc., David Fink.

3.   **Contested Issues of Fact**

   Whether Robert Barnes failed to properly perform his job duties as Director of Technical Operations and subsequently as Vice President of Maintenance while in the employ of Pan Am.

   Whether Robert Barnes' failure to properly perform his job duties as Director of Technical Operations and subsequently as Vice President of Maintenance in the employ of Pan Am resulted in damage to Pan Am.

   Whether Pan Am suffered damages as a result of Robert Barnes' failure to properly perform his job duties.

   Whether Robert Barnes had overall responsibility for Pan Am aircraft engine Inspection and Maintenance Departments.

   Whether Robert Barnes ever reported any concern to David Fink regarding

aircraft engine storage and preservation.

Whether Pan Am, at the time in question, was the owner of the engines that are the subject of this lawsuit.

Whether Robert Barnes was involved in the purchase of engines or aircraft from United Airlines in 2002.

Whether maintenance performed on engines was non-routine maintenance.

Whether the subject engines were improperly stored and/or preserved.

Whether proper storage and/or storage preservation procedures were followed during Robert Barnes' employment with Pan Am Airways, Inc.

Whether proper storage and/or storage preservation procedures as set forth in the applicable Pratt & Whitney Manual were followed during Robert Barnes' employment with Pan Am Airways, Inc.

Whether Robert Barnes had knowledge of improper storage and/or preservation of the subject engines.

Whether Robert Barnes was directly responsible for engine storage and/or preservation.

Whether Robert Barnes, while employed by Pan Am, ever discussed with any FAA employee, issues pertaining to Pan Am's storage and preservation of aircraft engines.

Whether Robert Barnes ever told any FAA employee whether aircraft engines could be run in lieu of being inspected or preserved in accordance with Pratt & Whitney Manual.

Whether Robert Barnes knew or should have known that aircraft engines were being improperly stored and/or preserved at Pan Am's Portsmouth, NH facility during RB's employment with PA.

Whether Robert Barnes knew or should have known that the Pan Am maintenance manual did not properly provide guidance to Pan Am maintenance and inspection personnel as to the proper procedures to be followed for the storage and/or preservation of aircraft engines.

Whether Robert Barnes instigated or was otherwise involved in the FAA investigation of Pan AM alleged improper storage and preservation of subject aircraft engines.

Whether Pan Am could have used its own maintenance personnel to work on engines.

Whether Pan Am was required to carry insurance for engines and aircraft.

Whether the proscribed procedure by the engine manufacturer Pratt & Whitney was the only means to properly store engines.

Whether Plaintiff's maintenance personnel had followed alternate procedures to keep engines airworthy.

Whether Pan Am mitigated damages

Whether David Fink was president of Boston Maine Airways at all relevant times to the lawsuit.

Whether David Fink was Executive Vice President of Guilford Transportation at all relevant times to the lawsuit.

Whether the Director of Maintenance is responsible for airworthiness under 14 CFR 119.65

Whether the determination of airworthiness of aircraft and engines is the airline's responsibility.

Whether the Federal Aviation Administration merely agrees or disagrees with an airline's
airworthiness determination.

Whether Pan Am first found out about the perceived improper storage through a letter written by Paul Hubbard, a Principal Maintenance Inspector with the Federal Aviation Administration.

Whether Pan Am had been flying at least one aircraft commercially, with engines attached that are subject to this lawsuit.

Whether Pan Am could fly any airplanes in commerce without prior determination of airworthiness.

Whether Mr. Barnes, as Vice president, was not one of the required five "key people" that had to be listed with the FAA under 14 CFR 119.65.

Whether Mr. Barnes was the only person responsible for oversight and management of Pan Am's Maintenance.

Whether Mr. Barnes' job responsibilities included inspecting aircraft or engines.

Whether any Executives at the level of Director of Maintenance or higher performed maintenance on engines.

Whether Pan Am has identified any other people as having responsibility for proper engine storage.

Whether Mr. Barnes is a public figure.

Whether Pan Am sent its original complaint, via Fedex, to Mr. Barnes' workplace.

Whether the original complaint was given to another Robert Barnes, not the Defendant, at the Logan Fire Station.

Whether the other Mr. Barnes opened and read the complaint in the presence of others.

The original complaint, in addition to negligence and negligent supervision, alleged intentional damage to property and conversion.

Whether a co-employee of the defendant Robert Barnes, who is likewise named Robert Barnes, was served with a copy of Pan Am's summons and complaint at the defendant's work place on March 16, 2004.

Whether any third party read, or otherwise aware of the allegations contained in the plaintiff's complaint at the time of service on March 16, 2004.

Whether the defendant, Robert Barnes, suffered any damages or injuries as a result of the service of the summons and complaint in March 16, 2004.

Whether Pan Am served the summons and complaint to Barnes' work place with the knowledge and intent that the summons and complaint would be published to others.

Whether Pan Am unreasonably and unnecessarily published defamatory statements due to its service of the summons and complaint at the defendant's work place.

Whether the allegations pertaining to Robert Barnes contained in Pan Am's complaint were true and accurate, such that they could not be deemed to be defamatory.

Whether maintenance was performed by line mechanics.

Whether line mechanics reported to, and were supervised by, their respective supervisors.

Whether inspections were performed by inspectors.

Whether inspectors reported to, and were supervised by, the Chief Inspector.

Whether all maintenance and inspection supervisors, including, but not limited to the chief inspector, were overseen by Robert Barnes and through their respective supervisors, reported to Robert Barnes.

Whether all maintenance and inspection supervisors, including, but not limited to the chief inspector, were overseen by Robert Barnes and reported directly to Robert Barnes.

Plaintiff reserves the right to supplement this list prior to trial.

Defendant reserves the right to supplement this list prior to trial.

**4.      Jurisdictional Questions.**

None.

**5.      Questions Raised by Pending Motions**.

**Plaintiff's Questions Raised by Pending Motions in Limine.**

PLAINTIFF/COUNTERCLAIM DEFENDANT, PAN AMERICAN AIRWAYS CORP.'S, MOTION IN LIMINE FOR SEPARATE TRIALS, PURSUANT TO FED. R. CIV. P. 42(b);

PLAINTIFF/COUNTERCLAIM DEFENDANT, PAN AMERICAN AIRWAYS CORP.'S, MOTION IN LIMINE FOR A PRE-TRIAL RULING AS TO CHOICE OF LAW TO BE APPLIED TO PLAINTIFF'S CLAIMS AND DEFENDANT'S COUNTERCLAIMS;

PLAINTIFF/COUNTERCLAIM DEFENDANT, PAN AMERICAN AIRWAYS CORP.'S, MOTION IN LIMINE TO PRECLUDE EVIDENCE OF INSURANCE, PURSUANT TO FED. R. EVID. 411; and

PLAINTIFF/COUNTERCLAIM DEFENDANT, PAN AMERICAN AIRWAYS CORP.'S, MOTION IN LIMINE FOR A PRE-TRIAL RULING AS TO THE STANDARD TO BE APPLIED TO PLAINTIFF'S CLAIMS ALLEGING NEGLIGENCE ON THE PART OF THE DEFENDANT.

          **Defendant's   Questions Raised by Pending Motions**.

          DEFENDANT'S, MOTION IN LIMINE FOR A PRE-TRIAL RULING  AS TO CHOICE OF LAW TO BE APPLIED TO PLAINTIFF'S CLAIMS  AND DEFENDANT'S COUNTERCLAIMS

          DEFENDANT/COUNTER-PLAINTIFF'S   MOTION IN LIMINE FOR A PRE-TRIAL RULING  AS TO THE STANDARD TO BE APPLIED TO DEFENDANT/COUNTER-PLAINTIFF'S  DEFAMATION CLAIMS AGAINST THE PLAINTIFF/COUNTER-DEFENDANT.

6. **Issues of law, including evidentiary questions, with supporting authority**.

    None other than the questions raised in Motions in Limine set forth in Section 5 above.

7. **Amendments to the Pleadings.**

    None.

8. **Additional Matters to Aid in Disposition of Action.**

    See Motions in Limine set forth in Section 5 above.

9. **Estimated Length of Trial**

    **Plaintiff**     7 full days.

    **Defendant**    3 full days.

10. **Witnesses**

    **Plaintiff:**

    Robert Barnes
    Robert E. Barnes
    David Fink
    John R. Bulter
    David Mailhot
    Eduard Stalzer
    David Gaynor
    Paul Hubbard
    John L. Driscoll
    Gerry Terpstra
    Stanley Joiner

       David Forney
       Nick Wait
       Keeper Of Records for Federal Aviation Administration
       Keeper Of Records for F. J. Turbine Power Inc.
       David Barry
       Steven Legere
       Rebuttal Witnesses

The plaintiff expects to call the witnesses listed for the defendant and reserves the right to supplement this list of witnesses prior to trial, with adequate notice to the defendant.

       **Defendant:**

1. David Fink
2. Eduard Stalzer
3. David Gehner
4. Paul Hubbard
5. Robert Barnes
6. Robert E. Barnes
7. Witnesses needed for authentication
8. Rebuttal Witnesses
9. Any witness listed by the plaintiff
10. Defendant reserves the right to supplement this list.

**11.**     **Proposed Exhibits**

**12.**     **Motions in Limine**

    PLAINTIFF/COUNTERCLAIM DEFENDANT, PAN AMERICAN AIRWAYS CORP.'S, MOTION IN LIMINE FOR SEPARATE TRIALS, PURSUANT TO FED. R. CIV. P. 42(b);

    PLAINTIFF/COUNTERCLAIM DEFENDANT, PAN AMERICAN AIRWAYS CORP.'S, MOTION IN LIMINE FOR A PRE-TRIAL RULING AS TO CHOICE OF LAW TO BE APPLIED TO PLAINTIFF'S CLAIMS AND DEFENDANT'S COUNTERCLAIMS;

    PLAINTIFF/COUNTERCLAIM DEFENDANT, PAN AMERICAN AIRWAYS CORP.'S, MOTION IN LIMINE TO PRECLUDE EVIDENCE OF INSURANCE, PURSUANT TO FED. R. EVID. 411; and

    PLAINTIFF/COUNTERCLAIM DEFENDANT, PAN AMERICAN AIRWAYS CORP.'S, MOTION IN LIMINE FOR A PRE-TRIAL RULING AS TO THE

STANDARD TO BE APPLIED TO PLAINTIFF'S CLAIMS ALLEGING NEGLIGENCE ON THE PART OF THE DEFENDANT.

DEFENDANT'S, MOTION IN LIMINE FOR A PRE-TRIAL RULING AS TO CHOICE OF LAW TO BE APPLIED TO PLAINTIFF'S CLAIMS AND DEFENDANT'S COUNTERCLAIMS

DEFENDANT/COUNTER-PLAINTIFF'S MOTION IN LIMINE FOR A PRE-TRIAL RULING AS TO THE STANDARD TO BE APPLIED TO DEFENDANT/COUNTER-PLAINTIFF'S DEFAMATION CLAIMS AGAINST THE PLAINTIFF/COUNTER-DEFENDANT.

| The Plaintiff/Counterclaim Defendant, Plaintiff | The Defendant/Counterclaim |
|---|---|
| By its attorney, | By his attorney, |
| John J. O'Brien, Jr. | Peter Piel, Esq. |
| BBO# 375885 | BBO# 639070 |
| O'Brien & von Rosenvinge, P. C. | Law Office of Peter Piel |
| 27 Mica Lane, Suite 202 | 800 Turnpike St., Suite 300 |
| Wellesley, MA 02481 | North Andover, MA 01845 |
| (781) 239-9988 | (978) 794-7755 |

DATED: September 12, 2006
JointPretrialMemo3